**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CHRISTOPHER MARSHALL GAME,  )
              Petitioner,  )
                         )
       v.             )          1:18CV712
                         )
ERIK A. HOOKS,  )
                         )
              Respondent.  )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus via 28 U.S.C. § 2254. (Docket Entry 1.) For the reasons that follow, this Court should deny relief.

### I.  Background

After a jury found Petitioner guilty of felony hit and run resulting in death, involuntary manslaughter, and driving while license revoked in cases 14CRS56200, 14CRS710389, and 15CRS116, the Superior Court of Randolph County entered a consolidated judgment imposing a term of 33 to 59 months in prison. (Id., ¶¶ 1, 3-6; see also Docket Entry 5-2 at 96-103.)[1]  Immediately following Petitioner's sentencing, Petitioner's trial counsel made arguments in support of a Motion for Appropriate Relief ("MAR"), contending that Petitioner's acquittal of the misdemeanor death by vehicle offense should have led to his acquittal of the involuntary manslaughter offense, because the two offenses share all but one of

---

[1] Throughout this Recommendation, pin citations to page numbers refer to the page numbers in the footer appended to those materials at the time of their docketing in the CM/ECF system.

the same elements. (See Docket Entry 5-10 at 17-18.) The trial court denied that MAR in open court. (See Docket Entry 5-2 at 104; Docket Entry 5-10 at 18.)

Petitioner, proceeding through counsel, pursued a direct appeal, raising the sole issue that the trial court committed a clerical error by signing a judgment and commitment form that reflected a maximum sentence of 59 months in prison rather than the 49 months imposed in open court. The North Carolina Court of Appeals "remand[ed] the judgment to the trial court for correction of th[at] clerical error," State v. Game, No. COA18-306, ___ N.C. App. ___, 821 S.E.2d 316 (table), 2018 WL 6053724, at *1 (Nov. 20, 2018) (unpublished). Petitioner did not further pursue his direct appeal.

While Petitioner's direct appeal remained pending, he filed a pro se Petition for Writ of Habeas Corpus in the trial court, seeking "his release from custody until [his] appeals ha[d] complete[d]." (Docket Entry 5-5 at 3.)[2] Subsequently, Petitioner submitted a second pro se MAR in the trial court, alleging (1) trial counsel provided ineffective assistance by failing to present to the jury the testimony and accident reconstruction documents of Dr. Charles Manning; (2) trial counsel provided ineffective assistance by not introducing into evidence two differing copies of an accident report; (3) the state coerced two witnesses by discussing the case with them; (4) the state violated its expert

---

[2] Although the record before the Court does not contain a ruling from the trial court on Petitioner's Petition for Writ of Habeas Corpus, the conclusion of Petitioner's direct appeal moots the relief he sought therein.

witness disclosure obligations under N.C. Gen. Stat. § 15A-903(a)(2) and Brady v. Maryland, 373 U.S. 83 (1963); and (5) Petitioner has discovered new evidence with a direct and material bearing on Petitioner's guilt or innocence. (See Docket Entry 5-6.) The record does not contain a ruling from the trial court on Petitioner's second MAR.

Petitioner subsequently instituted this action by filing a form Petition under 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has moved for summary judgment. (Docket Entry 4; see also Docket Entry 5 (Respondent's summary judgment brief).) Petitioner has responded. (Docket Entry 7; see also Docket Entry 8 (Affidavit/Declaration in Support).)[3]

## II. Grounds for Relief

The Petition raises four grounds for relief:

(1) trial counsel "rendered ineffective assistance of counsel when he failed to adequately present initial indictment element

---

[3] In Petitioner's response in opposition to Respondent's summary judgment motion, he requests that "this Court grant and order that Petitioner's Amicus Curiae, Scottie Lee Graves© (SPC), Attorney-In-Fact be authorized [sic] by [the C]ourt, sua sponte, the full participation and [t]hirty (30) days extension to the provided statute, to adequately research, investigate and review all records to impartially rebut [Respondent's] errors, omissions and points." (Docket Entry 7 at 3 (underscoring omitted and standard capitalization applied).) However, because Mr. Graves does not qualify as a licensed attorney admitted to practice before this Court, he lacks any right to represent Petitioner in this matter. See Berrios v. New York City Hous. Auth., 564 F.3d 130, 134 (2d. Cir. 2009) (noting "principle embodied in [28 U.S.C.] § 1654 that a non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel"); Rochester v. United States Gov't, No. C.A. 2:08-427-HMH-RS, 2008 WL 618792, at *2 (D.S.C. Mar. 3, 2008) (unpublished) ("[S]ince the petitioner is not an attorney admitted to practice before the United States District Court for the District of South Carolina, she may not 'represent' her incarcerated brother."). Accordingly, the Court should not authorize Mr. Graves to represent Petitioner, or allow Mr. Graves a 30-day extension to file further arguments on Petitioner's behalf.

only be charge [sic] to lesser charged offense of only misdemeanor death by vehicle" (Docket Entry 1, ¶ 12 (Ground One) (underscoring omitted and standard capitalization applied));

(2) "[t]he indictment and conviction is [sic] unconstitutionally invalid when [the prosecutor] initially only charged Petitioner [] w[ith] mis[demeanor] death by vehicle and prejudicially enhanced/trumped the charge to current invalid finding of guilt [seven] months later [and] . . . altered the Highway Patrol Officer[']s Form 349 - Accident Report to be 45 [miles per hour] to 60 [miles per hour]" (id., ¶ 12 (Ground Two)(a) (underscoring omitted and standard capitalization applied));

(3) the prosecutor engaged in "unconstitutional/illegal altering to the accident reconstruction make [sic] conviction upheld by these fabrication[s] make [sic] reversable [sic] error warranting a new sentencing hearing" and "[p]resentation of photos from another accident (not Petitioner[']s) confused and mislead [sic] [j]urors from Petitioner's factual evidence and facts" (id., ¶ 12 (Ground Three)(a) (underscoring omitted and standard capitalization applied)); and

(4) "current changes in law require this Court to correct, set aside or vacate Petitioner[']s sentence/review facts 'de novo'" (id., ¶ 12 (Ground Four) (underscoring omitted and standard capitalization applied)), in that "the expungement law (Bill 455, N.C.G.S. [§§] 15A-145 [to] 160) [provides] that crimes/convictions 10 years or older should not be utilized for any current or new

conviction" (id., ¶ 12 (Ground Four)(a) (standard capitalization applied)).

### III. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, "[b]efore [the C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. . . . The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

### IV. Discussion

**A. Exhaustion**

Respondent argues in support of his Motion for Summary Judgment that "Petitioner admits [that] he did not raise any of his current Grounds for Relief on appeal" and that "he did not raise Grounds for Relief (2), (3), and (4), in his MAR," which remains "pending." (Docket Entry 5 at 3; see also Docket Entry 1, ¶ 12 (Ground Two)(b), (Ground Three)(b), (Ground Four)(b); Docket Entry 5-3 (Petitioner's appellate brief).)[4] Accordingly, Respondent

---

[4] Petitioner appears to also admit that he failed to raise Ground One in his second MAR (see Docket Entry 1, ¶ 12 (Ground One)(b) (explaining that he "did not exhaust [his] state remedies on Ground One" because "[i]t would have been futile as their [sic] exist[s] no law library to include adequate citations or case law authories [sic] to support claims" (underscoring omitted and standard capitalization applied)), and a comparison of Ground One with the claims in Petitioner's second MAR confirms that apparent admission (compare Docket Entry 1, ¶ 12 (Ground One), with Docket Entry 5-6).

contends that "Petitioner has therefore failed to exhaust state remedies as required by 28 U.S.C. § 2254(b)(1)(A), and Respondent does not waive non-exhaustion." (Docket Entry 5 at 3.) Respondent points out that "[t]his Court has the power . . . to deny Petitioner's Grounds for Relief on the merits notwithstanding non-exhaustion, and Respondent's refusal to waive non-exhaustion." (Id. at 4 (citing 28 U.S.C. § 2254(b)(2)).) Respondent urges the Court to "exercise that power here, because Petitioner's Grounds for Relief are without merit, and in order to conserve scarce judicial resources both state and federal." (Id.)

In response, Petitioner contends that he "is not in violation of exhaustion rights, but offocial [sic] individuals in the [trial court] are, as well as those in the [North Carolina Court of Appeals], whom 'procedural defaults' and 'failure to timely reply or comply,' clearly well over a year after [Petitioner's] filed appeals and MAR are now futile." (Docket Entry 7 at 2 (standard capitalization applied).) Petitioner maintains that he "has attempted in good faith to have exhausted available avenues, however, it's been well over a year now where both [sic] the [North Carolina Court of Appeals] has failed to correct simple clerical errors of the wrong sentencing terms." (Id. at 5 (standard capitalization applied).)

Petitioner's attempt to shift the blame for his claims' non-exhaustion to alleged delays in ruling by the North Carolina Court of Appeals and/or the MAR court falls short, as he glosses over the fact that, even had those courts already ruled on his direct appeal

and/or his second MAR at the time he filed the instant Petition, he did not raise any of his instant Grounds for Relief on direct appeal (see Docket Entry 1, ¶ 12; see also Docket Entry 5-3), or in a separate MAR (see Docket Entry 1, ¶ 12; see also Docket Entries 5-5, 5-6).  As a result, Petitioner did not exhaust his state-court remedies regarding any of his Grounds for Relief.  See Howard v. Lassiter, No. 1:12CV453, 2013 WL 5278270, at *2 n.3 (M.D.N.C. Sept. 18, 2013) (unpublished) ("Petitioner has failed to exhaust his state court remedies . . . as he did not raise [the claim] on direct appeal or via [MAR] in the state courts." (citing cases)), recommendation adopted, 2013 WL 5461847 (M.D.N.C. Sept. 30, 2013) (unpublished) (Osteen, Jr., C.J.), appeal dismissed, No. 13-7663, 2014 WL 265541 (4th Cir. Jan. 24, 2014) (unpublished).  Thus, the Court presently may not grant habeas relief on any of Petitioner's Grounds for Relief, 28 U.S.C. § 2254(b)(1); however, such claim(s) "may be denied on the merits, notwithstanding the failure of [Petitioner] to exhaust [state-court] remedies," 28 U.S.C. § 2254(b)(2) (emphasis added).

**B. Merits**

**1. Ground One**

Ground One contends that Petitioner's trial counsel "rendered ineffective assistance of counsel when he failed to adequately present initial indictment element only be charge [sic] to lesser charged offense of only misdemeanor death by vehicle."  (Docket Entry 1, ¶ 12 (Ground One) (underscoring omitted and standard

capitalization applied).) In the section requesting "[s]upporting facts," Petitioner alleges:

> [Trial counsel] failed to challenge the [p]rosecutor's [] case to meaningful advaserial [sic] testings by not: 1) [a]dequately referencing to the jury his client, "if" found guilty[,] can only be "elemently" [sic] probable to misdemeanor death, and therefore not guilty to the invalid term or findings challenged herein. . . . 2) . . . adequately cross examin[ing] witness to only elements of misdemeanor death and show[ing] jurors the [p]rosecution's case/charges were prejudicially aggrivated [sic].

(Id., ¶ 12 (Ground One)(a) (underscoring omitted and standard capitalization applied).) Petitioner's contentions miss the mark.

In order to prove ineffective assistance of counsel, Petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 688-92 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). Moreover, to establish prejudice, Petitioner must show a reasonable probability that but for counsel's unprofessional errors, a different result would have occurred. Strickland, 466 U.S. at 694.

Although Petitioner's contentions lack coherency, he appears to fault his trial counsel for not challenging the state's indictment of Petitioner for <u>felony</u> involuntary manslaughter in June 2015 (see Docket Entry 5-2 at 11), when the state initially charged him in December 2014 with, inter alia, misdemeanor death by

-8-

vehicle (see id. at 6-8). However, Petitioner has not provided the Court with any basis for attacking the validity of the June 2015 involuntary manslaughter indictment. (See Docket Entries 1, 7, 8.) The indictment bears the signatures of the prosecutor and the grand jury's foreperson, reflects that the same highway patrolman who brought the initial charges against Petitioner in December 2014 testified as a witness before the grand jury, and that twelve or more grand jurors concurred in the bill of indictment. (See Docket Entry 5-2 at 11.) Under such circumstances, no basis existed to attack the validity of the involuntary manslaughter indictment, and Petitioner's trial counsel could not have rendered ineffective assistance for failing to make such a meritless argument. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not constitutionally ineffective in failing to object . . . [when] it would have been futile for counsel to have done so . . . ."); Ellison v. United States, Nos. 3:07CR30RJC, 3:10CV207RJC, 2013 WL 2480654, at *3 (W.D.N.C. June 10, 2013) (unpublished) ("[A]ny arguments made by counsel along the lines suggested by [the p]etitioner would have been futile. Therefore, [the p]etitioner has failed to establish a prima facie claim of ineffective assistance of counsel."); Walker v. United States, Civ. No. WDQ-10-2739, Crim. No. WDQ-07-0146, 2011 WL 4103032, at *3 (D. Md. Sept. 9, 2011) (unpublished) (ruling that where argument "would

have been futile [a defendant's] appellate counsel was not ineffective for failing to raise it").

In short, Ground One fails as a matter of law.

**2. Ground Two**

Via Ground Two, Petitioner argues that "[t]he indictment and conviction is [sic] unconstitutionally invalid when [the prosecutor] initially only charged Petitioner [] w[ith] mis[demeanor] death by vehicle and prejudicially enhanced/trumped the charge to current invalid finding of guilt [seven] months later [and] . . . altered the Highway Patrol Officer[']s Form 349 - Accident Report to be 45 [miles per hour] to 60 [miles per hour]." (Docket Entry 1, ¶ 12 (Ground Two)(a) (underscoring omitted and standard capitalization applied); see also id. at 16-17 (Petition's Exhibits A and B consisting of two purported accident report forms bearing different speeds for "Veh[icle] # 2," i.e., 45 miles per hour and 60 miles per hour).) Ground Two does not entitle Petitioner to habeas relief.

With regard to Ground Two's argument regarding the involuntary manslaughter indictment, Petitioner has merely attempted to repackage Ground One's meritless ineffective assistance contentions into a claim of prosecutorial vindictiveness. In general, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). However, a prosecutor may not

retaliate against a defendant for exercising a constitutionally protected right, such as invoking the right to proceed to trial or pursuing an appeal. See United States v. Goodwin, 457 U.S. 368, 372 (1982); Bordenkircher, 434 U.S. at 363; United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001). In that regard, Petitioner bears the burden to show "that (1) the prosecutor acted with genuine animus toward the defendant[;] and (2) the defendant would not have been prosecuted but for that animus." Wilson, 262 F.3d at 314. Petitioner can meet that burden in either of two ways: (1) with direct evidence that actual vindictiveness motivated the prosecutorial decision, Alabama v. Smith, 490 U.S. 794, 799 (1989); United States v. Woods, 305 F. App'x 964, 966 (4th Cir. 2009); or (2) with circumstantial evidence establishing a rebuttable presumption of a "reasonable likelihood of vindictiveness," Goodwin, 457 U.S. at 373. However, a presumption of vindictiveness . . . will rarely, if ever, be applied to prosecutors' pretrial decisions." Wilson, 262 F.3d at 315. If Petitioner successfully raises the presumption, the burden shifts to the state to demonstrate a legitimate motivation for the challenged action. Woods, 305 F. App'x at 966 (citing Goodwin, 457 U.S. at 374).

Here, Petitioner merely asserts that the state's addition of the involuntary manslaughter charge via indictment approximately five months after bringing the initial charges against Petitioner qualifies as "prejudicial[]" and "invalid." (Docket Entry 1, ¶ 12 (Ground Two)(a) (underscoring omitted and standard capitalization

applied).)  In so arguing, Petitioner appears to rely solely on the timing of the involuntary manslaughter indictment, as he neither identifies defects in the indictment itself, nor explains what improper animus allegedly motivated the state to add the involuntary manslaughter charge.  (See Docket Entries 1, 7, 8.)  That failure dooms petitioner's claim.  See Goodwin, 457 U.S. at 381-82 ("In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.  At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. . . .  A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct.").

Petitioner also alleges that the state "altered the Highway Patrol Officer[']s Form 349 - Accident Report" by changing the reported speed of Petitioner's vehicle from "45 [miles per hour] to 60 [miles per hour]." (Docket Entry 1, ¶ 12 (Ground Two)(a) (underscoring omitted and standard capitalization applied); see also id. at 16-17 (Petition's Exhibits A and B consisting of two purported accident report forms bearing different speeds for "Veh[icle] # 2," i.e., 45 miles per hour and 60 miles per hour).) Those allegations fail as conclusory and unsupported.

At trial, Petitioner's accident reconstruction expert, Dr. Charles Manning, examined two different versions of the highway patrol's accident report for Petitioner's collision – one dated November 17, 2014, which listed the initial speed of Petitioner's vehicle as 45 miles per hour and speed at impact as 40 miles per hour, and another one dated January 7, 2015, which described the initial rate of speed of Petitioner's vehicle as 60 miles per hour and speed at impact as 30 miles per hour. (See Docket Entry 5-8 at 91-95.) Dr. Manning thereafter testified that he disagreed with some of the speeds listed on the reports, and described his methodology for coming up with different initial and impact speeds for the vehicles. (See id. at 96-103.) At no time during that testimony did Dr. Manning state (or even imply) that the highway patrol (and/or the prosecution) improperly "altered" the accident reports or engaged in any type of improper conduct with respect to the reports. (See id. at 91-103.) Moreover, Petitioner's counsel did not ask the highway patrolman who completed the reports any questions regarding the reports on cross-examination (let alone questions about improper "alteration" of those reports) (see Docket Entry 5-7 at 68-75), and made no arguments to the jury in closing regarding "alteration" or improper conduct by the state regarding the reports (see Docket Entry 5-8 at 152-162).

Petitioner here tries to make the highly speculative leap from the mere existence of two different accident reports to the allegation that the state improperly "altered" the reports. (Docket Entry 1, ¶ 12 (Ground Two)(a).) Petitioner's argument

makes little sense, given that the state turned over both versions of the reports to Petitioner's trial counsel, and fails as entirely conclusory and unsupported, see Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that, in order to obtain an evidentiary hearing, habeas petitioner must come forward with some evidence that claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999); Powell v. Shanahan, No. 3:13CV496FDW, 2014 WL 1464397, at *8 (W.D.N.C. Apr. 15, 2014) (unpublished) (deeming "unsupported and conclusory allegations . . . insufficient to warrant either an evidentiary hearing or habeas relief").

**3. Ground Three**

Ground Three alleges that the prosecutor engaged in "unconstitutional/illegal altering to the accident reconstruction make [sic] conviction upheld by these fabrication[s] make [sic] reversable [sic] error warranting a new sentencing hearing" and "[p]resentation of photos from another accident (not Petitioner[']s) confused and mislead [sic] [j]urors from Petitioner's factual evidence and facts." (Docket Entry 1, ¶ 12 (Ground Three)(a) (underscoring omitted and standard capitalization applied).) As discussed above in the context of Ground Two, Petitioner's allegation that the state improperly altered the accident report(s) fails as conclusory. See Nickerson, 971 F.2d at 1136; Powell, 2014 WL 1464397, at *8. Similarly, Petitioner has made no attempt to explain who presented photographs "from another accident" to the jury, which photographs he references, and how

-14-

those photographs "confused and mislead [sic] [j]urors." (Docket Entry 1, ¶ 12 (Ground Three)(a) (underscoring omitted).) As such, that aspect of Ground Three also fails as conclusory. See Nickerson, 971 F.2d at 1136; Powell, 2014 WL 1464397, at *8.

**4. Ground Four**

Lastly, Petitioner maintains that "current changes in law require this Court to correct, set aside or vacate Petitioner['']s sentence/review facts 'de novo.'" (Docket Entry 1, ¶ 12 (Ground Four) (underscoring omitted and standard capitalization applied).) More specifically, Petitioner contends that, effective in December 2017, "the expungement law (Bill 455, N.C.G.S. [§§] 15A-145 [to] 160) [provides] that crimes/convictions 10 years or older should not be utilized for any current or new conviction." (Id., ¶ 12 (Ground Four)(a) (standard capitalization applied).)

Article 5 of Chapter 15A of the North Carolina General Statutes governs the conditions under which an individual may apply to have certain of his or her criminal convictions expunged from his or her record. See generally N.C. Gen. Stat. §§ 15A-145 to 153. Sections 15A-151 and 15A-151.5, effective December 1, 2017, provide that prosecutors may utilize certain expunged criminal records to calculate prior record level when the offender in question obtains a new criminal conviction. See N.C. Gen. Stat. §§ 15A-151(a)(7) & 15A-151.5(b) (2017). Thus, contrary to Petitioner's characterization (see Docket Entry 1, ¶ 12, (Ground Four)(a)), Sections 15A-151 and 15A-151.5 do not prevent the state from utilizing convictions ten years or older in connection with

-15-

any new conviction.  Moreover, Petitioner has not explained how a law effective on December 1, 2017, could retroactively apply to his offenses committed in 2014 and/or convictions in August 2017. Further, Petitioner has not alleged that he ever applied for (much less that the state granted) an expunction of any of his prior convictions, or that such an expunction would have impacted his prior record level and/or the length of his prison sentence.  Under such circumstances, Ground Four must fail as conclusory, see Nickerson, 971 F.2d at 1136; Powell, 2014 WL 1464397, at *8.[5]

### V. Conclusion

Petitioner's federal habeas claims fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted and that judgment be entered against Petitioner in this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 14, 2019

---

[5] Respondent alternatively has argued that Ground Four qualifies as non-cognizable (see Docket Entry 5 at 8), as well as that the so-called Teague bar forecloses habeas relief (see id. at 8-9).  Because the Ground Four clearly falls short under de novo review, the Court need not address Respondent's alternative arguments.